IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| NATHAN KEITH WHITAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:20-cv-00079-LSC |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

## I. Introduction

The plaintiff, Nathan Keith Whitaker ("Whitaker"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Whitaker timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Whitaker was 47 years old at the time of his SSI application, and he attended school through the tenth grade. (Tr. at 33, 47, 240, 271, 285.) His past work experience includes employment as a garbage collector driver. (Tr. at 33, 271, 286.)

1

Whitaker claims that he became disabled on November 1, 2012, as a result of limitations imposed by arthritis, bilateral knee surgeries, neck fusion surgery, right shoulder surgery for torn ligaments, bilateral carpal tunnel syndrome, gout, and schizoaffective disorder, bipolar type with psychotic features. (Tr. at 22, 27, 284.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the

record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can

make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Whitaker has not engaged in SGA since December 27, 2016, the date of his SSI application. (Tr. at 24.) According to the ALJ, Whitaker's "osteoarthritis, back degenerative disc disease, muscle and ligament disorders, bilateral carpal tunnel syndrome, knee degenerative joint disease, status post leg fracture, tremors, and depressive/bipolar and anxiety/obsessive disorders" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25-26.) The ALJ determined that Whitaker has the following RFC:

> [T]o perform light work as defined in 20 C.F.R. [§] 416.967(b) except for occasional climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds; occasional balancing, stooping, and crouching; no kneeling or crawling; frequent handling bilaterally; he must avoid concentrated exposure to extreme temperatures, wetness, humidity, and vibration; he must avoid all exposures to hazards such as open flames, unprotected heights, and dangerous moving machinery;

and he is limited to unskilled work which is simple, repetitive and routine; his supervision must be simple, direct, concrete and uncritical; interpersonal contact with supervisors and coworkers must be incidental to the work performed, e.g. assembly work; he will do best in a well-spaced work environment; he should have only occasional, gradually introduced workplace changes; he must have normal, regular work breaks at least every 2 hours; he will need help in planning and goal setting; and he should have only occasional, non-intensive contact with the general public.

(Tr. at 27.)

According to the ALJ, Whitaker is unable to perform past relevant work as a garbage collector driver. (Tr. at 32–33.) The ALJ also determined that Whitaker was a "younger individual age 18-49" at 47 years old, has a limited education, and is able to speak in English, as those terms are defined by the regulations. (*Id.* at 33.) The ALJ determined that the "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Because Whitaker cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used the Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Whitaker is capable of performing, such as small product assembler and inspector packer. (Tr. at 33-34.) The ALJ concluded his findings by stating that Whitaker "has not been under a

disability, as defined in the Social Security Act, since December 27, 2016, the date the application was filed." (Tr. at 34.)

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181

(11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

### III. Discussion

Whitaker argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ improperly determined that Whitaker could perform frequent bilateral handling despite Whitaker's complaints of the severity of his right-hand tremors, and (2) the ALJ improperly discounted Whitaker's complaints of knee, back, and shoulder pain.

Whitaker's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). However, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 82 Fed. Reg. 49,463 n. 3 (Oct. 25, 2017); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the plaintiff's symptoms, such as pain,

affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of the plaintiff's symptoms, (3) the plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the plaintiff takes to relieve symptoms, and (8) any conflicts between a plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), (4), 416.929(c)(2), (3), (4); SSR 16-3p, 82 Fed. Reg. 49,463 n. 3. In order to discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985) (citation omitted), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *See Dyer*, 395 F.3d at 1210. However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The question is not . . . whether [the] ALJ could have reasonably credited

9

[Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ indicated that Whitaker's medically determinable impairments could reasonably be expected to cause his alleged symptoms, satisfying the first part of the pain standard. (Tr. at 28.) However, the ALJ found that Whitaker's statements and third-party testimony concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that was inconsistent with his subjective complaints. (*Id.*)

### A. Whitaker's right-handed tremor

Substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his right-hand tremor were inconsistent with the medical evidence and other evidence in the record. (Tr. at 27–28.) *See* 20 C.F.R. § 416.929(c)(2)-4; SSR 16-30; *Wilson*, 284 F.3d at 1225–26. Indeed, clinical examinations and diagnostic studies did not reveal objective findings to support Whitaker's subjective complaints of disabling pain and limitation due to his right-hand tremors, and Whitaker failed to establish that he could not perform frequent bilateral handling. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 416.905(a), 416.909.

First, the ALJ acknowledged that Whitaker "had an obvious, very serious tremor in his right hand," which caused him to use both hands to sign anything or hold onto anything with his right hand without letting go "at some point." (Tr. at 28. 46, 49, 54). The ALJ also cited Whitaker's April 2016 bilateral carpal tunnel syndrome median nerve release procedures. (Tr. at 29, 347–52, 364–66, 374–76, 433). These procedures were performed without complication and Whitaker indicated he was "doing well" (Tr. at 353.)

Next, the ALJ cited Whitaker's consultative examination with Dr. John Jones. (Tr. at 29) (citing tr. at 705–06). Dr. Jones's consultative exam of Whitaker on March 11, 2017 found that Whitaker had only "mild difficulty with fine and gross manipulative skills in the right hand secondary to a rapid, pill rolling tremor in the right hand and mildly decreased strength (7/10)." (*Id.*) Dr. Jones's exam notes indicate Whitaker had had the tremor for about 15 years at the time of the exam. (Tr. at 702.) The ALJ also referenced Dr. Jones's physical examination notes, which found that Whitaker's grip strength was normal (5/5) bilaterally, his fine/gross manipulative skills were normal, his left-hand strength was normal, and his motor strength was normal (5/5) in all extremities. (Tr. at 29, 704.) Dr. Jones also noted that the rapid pill rolling tremor in Whitaker's right hand improved with use. (Tr. at 705.)

The ALJ further noted that, at a consultative psychological examination with Dr. Mary Arnold, Psy. D., in October 2017, Whitaker was able to use his right hand to remove and replace his wallet in his right-back pants pocket and open/close his truck door. (Tr. at 30–31, 709.)

The ALJ also cited Whitaker's multiple visits to Dr. Olga Bogdanova, M.D. (Tr. 29-30.) In October 2017, Whitaker attended a neurology consultation with Dr. Bogdanova. (Tr. at 714–715.) Dr. Bogdanova found that Whitaker's fine motor movements and rapid alternating movements were performed well. (Tr. at 29, 715.) Dr. Bogdanova also noted Whitaker's resting tremor of the right hand and postural tremor of the bilateral hands, though Whitaker exhibited normal sensory, vibration, reflexes, coordination, and finger-to-nose testing. (Tr. at 29, 715.) However, Dr. Bogdanova noted difficulty writing and frequent drink spilling. (Tr. at 714.) Dr. Bogdanova diagnosed an essential tremor, with a "more prominent postural component" that is not typical of Parkinson's Disease. (Tr. at 29–30, 715.) Dr. Bogdanova also noted that it may be a medication induced tremor, though she could not exclude a functional component. (Tr. at 30, 715.) Dr. Bogdanova placed Whitaker on a trial of Primidone for tremor control. (*Id.*)

In a follow up with Dr. Bogdanova in December 2017, Whitaker noted no change in tremors and reported that the medication made him dizzy. (Tr. at 30, 716.)

Although Whitaker could not afford a brain CT, physical and neurological examinations remained unchanged and mostly normal. (Tr. at 30, 716–717). Dr. Bogdanova noted that Whitaker's strength was 5/5 despite the resting tremor and that Whitaker performed fine motor and rapid alternating movements well. (Tr. at 716-17.)

The ALJ also noted that Whitaker reported to Dr. Sarah Boxley for a psychiatric evaluation on March 28, 2018, stating that his prescription for Latuda had helped with managing his tremor. (Tr. 30, 719.) Whitaker was able to sign his name to some extent. (Tr. 30, 719.) Dr. Boxley noted that Whitaker's prescription for Lithium was possibly contributing to his tremor, but Whitaker insisted he stay on Lithium to help his mood, depression, and hallucinations. (*Id.*)

The ALJ's reference to and reliance on these doctors' exams and findings demonstrate that the ALJ appropriately considered Whitaker's tremor. *See Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.") Whitaker has failed to point to any doctor that the ALJ failed to consider in his opinion, dispute the weight given to that opinion, or discuss how

any alleged opinion established greater functional limitations than those found by the ALJ in Whitaker's RFC finding. Indeed, the ALJ acknowledged that Whitaker underwent surgical interventions that "were effective in alleviating his symptoms and improving his functional abilities." (Tr. at 31.)

The ALJ also discussed Whitaker's own description of his daily activities, which do not indicate that his condition was as limiting as Whitaker claimed. *See* 20 C.F.R. § 416.929(c)(3); SSR 16-3p. Although not dispositive, a claimant's activities may show that his symptoms are not as limiting as alleged. See 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p; *Dyer*, 395 F.3d at 1210; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). As noted by the ALJ, Whitaker still drives, helps unload dishes from the dishwasher, and does some farm work with his chickens. (Tr. at 31; *see* tr. at 58-59.) Whitaker was also able to pick up items, Swiffer the floors, launder clothing, "piddle" with tools, and put shelves together. (Tr. at 711.) Plaintiff's activities are not indicative of the disabling limitations he alleged.

The record as a whole, as discussed by the ALJ, provides substantial evidence to support the ALJ's evaluation of Whitaker's subjective complaints of disabling pain and other symptoms regarding his right-hand tremors.

### B. Whitaker's Knee, Back, and Shoulder Pain

Substantial evidence also supports the ALJ's determination that Whitaker's knee, back, and shoulder pains were not as limiting as he alleged. (Tr. at 29.) *See* 20 C.F.R. § 416.929(c)(2)–(4); SSR 16-3p; *Wilson*, 284 F.3d at 1225–26.

Looking at the record holistically, the ALJ found that the surgical interventions had been effective in alleviating Whitaker's symptoms and improving his functional capabilities. (Tr at 29.) In the RFC, the ALJ recognized Whitaker's knee pain by restricting all kneeling, crawling, and climbing of ladders, ropes, and scaffolds as well as limiting Whitaker's climbing of ramps and stairs, balancing, stooping, and crouching. (Tr. at 27.)

Whitaker was diagnosed with various conditions, including arthritis, bilateral knee surgeries, and right shoulder surgery that causes "difficulties with lifting, squatting, walking, kneeling, and stair climbing." (Tr. at 27–28.) However, clinical examinations and diagnostic studies did not reveal objective medical findings to support Whitaker's subjective complaints of disabling pain and limitations due to his knee, back, and shoulder pain. Whitaker also failed to establish that he could not perform a reduced range of light work.

The ALJ noted that a left knee x-ray from March 16, 2016, showed postoperative findings but was otherwise normal. (Tr. 28, 530.) He also noted a right

knee x-ray from the same date that showed only degenerative changes and screws/metal plating from prior surgery. (Tr. at 28-29, 532.) Left tibia and fibula studies showed postoperative changes but no osseous abnormalities. (Tr. at 29, 529.) Bilateral femur imaging showed no fractures, loosening of equipment, or osseous lesions. (Tr. at 29, 533.)

The ALJ further noted that the consultative exam performed by Dr. Jones in 2017 revealed only mildly decreased range of motion in the knees, neck, and shoulder. (Tr. 29, 705.) Whitaker was able to ambulate without any assistive device and had a normal gait. (Tr. 29, 705.) Whitaker was also able to get up and off of the chair and the examination table without difficulty. (Tr. 29, 703.) Whitaker had negative straight leg raise testing, was able to walk on toes and heels, squat and recover, tandem heel walk, and bend over and touch his toes. (Tr. at 29, 704.) Whitaker had normal motor strength (5/5) in all extremities and normal range of motion in all extremities (including his hips and ankles). (Tr. at 29, 704–05.)

The ALJ acknowledged that Whitaker used crutches for ambulation due to knee pain in his October 2017 neurology consultation with Dr. Bogdanova. (Tr. at 29, 715.) However, the ALJ noted that the record does not indicate that any physician prescribed the use of an assistive device. (Tr. at 29, 715). Upon physical examination, Dr. Bogdanova noted Whitaker had normal muscle tone, bulk, and strength (5/5)

bilaterally throughout, without drift. (Tr. 714–15). In Whitaker's follow-up visit in December 2017, Dr. Bogdanova's physical examination findings were largely unchanged. (Tr. at 30, 717.) In his physical examinations in July 2018 with Dr. Bogdanova, Whitaker was still using an assistive device but reported no falls, loss of balance, dizziness, or vertigo. (Tr. at 30, 716-17.) Whitaker does not point to any doctor who indicated that his knee, shoulder, or back pain functionally limited his abilities to a degree greater than the light work, with additional non-exertional limitations that the ALJ found.

In addition, the ALJ properly found that Whitaker's daily activities do not indicate that his condition was as limiting as he claimed. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p; *Dyer*, 395 F.3d at 1210. Whitaker testified that he still drives, helps unload dishes from the dishwasher, and does some farm work. (Tr. at a31.) The record, as discussed by the ALJ, provides substantial evidence to support the ALJ's determination that these activities did not support the disabling limitations alleged. (Tr. at 31, 58–59, 711). The ALJ also reiterated that while Whitaker used a cane or crutches at times, there was no evidence presented that there was a medical need for such a device. (*Id.*)

Whitaker has failed to meet his burden of providing sufficient evidence to support his allegations of disabling limitations due to his knee, back, and shoulder

17

pain. *See* 42 U.S.C. §§ 423(d)(1)(A), (d)(5)(A); 20 C.F.R. §§ 416.929(a); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence. *See Phillips*, 357 F.3d at 1240 n.8. Accordingly, the ALJ's decision considered the plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211. Substantial evidence supports the ALJ's evaluation of Whitaker's subjective statements and his assessment of Whitaker's RFC. Whitaker has failed to prove that he had additional limitations. He also failed to meet his burden of proving that he could not perform the other jobs identified by the vocational expert. (Tr. at 34, 62–63.) Accordingly, substantial evidence supports the ALJ's findings and his conclusion that Whitaker was not disabled within the meaning of the Social Security Act.

## IV.   Conclusion

Upon review of the administrative record, and considering Whitaker's arguments, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 8, 2021.

                                                   _____
                                                           L. Scott Coogler
                                                    United States District Judge

                                                                                      203171